```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MARIO E. CASTRO,

                        Plaintiff,         MEMORANDUM & ORDER
                                           17-CV-4375(JS)(GRB)
        -against-

THE BANK OF NEW YORK MELLON, as
trustee for the certificate holders
of CWALT Inc., Alternative Loan Trust
2006-0A11 mortgage pass through
certificates 2006-0A11, f/k/a THE
BANK OF NEW YORK, ALTERNATIVE LOAN TRUST
2006-0A11 MORTGAGE PASS THROUGH
CERTIFICATES 2006-0A11, SHELLPOINT
MORTGAGE SERVICING, and UNKNOWN DEFENDANTS,

                        Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:     Mario E. Castro, pro se
                   419 West Hills Road
                   Melville, NY 11747

For Defendants:    Joseph M. DeFazio, Esq.
                   Natsayi Mawere, Esq.
                   Akerman LLP
                   666 Fifth Ave, 20th Floor
                   New York, NY 10018
```

SEYBERT, District Judge:

Plaintiff Mario Castro ("Plaintiff") commenced this action against the Bank of New York Mellon, as trustee for the certificate holders of CWalt Inc., Alternative Loan Trust 2006-0A11 mortgage pass through certificates series 2006-0A11 (the "Trust") formerly known as the Bank of New York (the "Bank of New York Mellon"), Alternative Loan Trust 2006-0A11 mortgage pass

through certificates series 2006-0A11,[1] Shellpoint Mortgage Servicing ("Shellpoint"), Select Portfolio Servicing ("Select"), Bank of America, NA ("Bank of America"), and unknown defendants on July 24, 2017. (Compl., Docket Entry 1.) On August 2, 2017, Plaintiff filed an Amended Complaint naming only the Bank of New York Mellon, as trustee for the Trust, Shellpoint, and unknown defendants (collectively "Defendants"). (Am. Compl., Docket Entry 4.) Generally, Plaintiff alleges that Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Fourteenth Amendment of the Constitution during the course of servicing his mortgage loan. (Am. Compl. at ECF pp. 3-7.)

Currently pending before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot., Docket Entry 13.) For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

---

[1] The Clerk of the Court is directed to TERMINATE Alternative Loan Trust 2006-0A11 mortgage pass through certificates series 2006-0A11 as a separate defendant in this action.

2

BACKGROUND

I.  Factual Background[2]

On March 7, 2006, Plaintiff executed a mortgage in favor of Mortgage Electronic Registration System ("MERS"), as nominee for Countrywide Bank, N.A., on property located at 419 West Hills Road, Melville, New York (the "Property") as security for a loan of $448,800.00. (Mortg., Mawere Decl., Ex. A, Docket Entry 13-2, at ECF p. 4-23.) The mortgage was assigned to the Bank of New York Mellon on September 1, 2011. (Assignment, Mawere Decl., Ex. B., Docket Entry 13-3, at ECF p. 4.)[3]

Plaintiff alleges that he sent requests for information to both the Bank of New York Mellon, which holds the mortgage, and Shellpoint, which services the loan, but has not received the requested information. (Am. Compl. at ECF p. 4.) Specifically, he maintains that, on February 8, 2017, he mailed a Qualified Written Request (the "QWR") to Defendants and did not receive a response. (Am. Compl. at ECF p. 4; QWR, see Compl., Docket

---

[2] The following facts are taken from the Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[3] The Court has considered both the mortgage and the assignment because these documents are either incorporated by reference or integral to the Amended Complaint. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Entry 1, at ECF pp. 14-32.)[4] He further alleges that he sent a notice of default on April 13, 2017 and a request for inspection of the original "wet ink" promissory note on June 8, 2017.[5] (Am. Compl. at ECF pp. 4-5; Not. of Default, Compl. at ECF pp. 33-34; Request.) Plaintiff attached copies of the signed certified mail receipts to his original Complaint. (Compl. at ECF pp. 7-13.)

Plaintiff avers that "defendants have refused to produce all answers requested as it regards to the validation of debt, proof of original and properly validated promissory note instrument (not a copy) along with proof of proper transfers, receipts, as well as proper ledger accounting arriving at for said debt." (Am. Compl. at ECF p. 5.) He maintains that he is "requesting basic validation of debt from entities not made known to [him]" and that his "credit was used to profit and abuse." (Am. Compl. at ECF p. 6.) Plaintiff alleges that this conduct violated his Fourteenth Amendment rights to "life, liberty, and property" and "due process." (Am. Compl. at ECF p. 7.)

---

[4] While Plaintiff did not attach certain documents, including the QWR, to the Amended Complaint, he attached them to his original Complaint. In light of his pro se status, the Court will consider the documents attached to the original Complaint. (See Compl. at ECF pp. 7-60.)

[5] While Plaintiff alleges that he sent the request for inspection of the original note on June 8, 2017, the request is dated May 18, 2017. (See Request, Compl. at ECF pp. 35-36.)

The Amended Complaint alleges that Plaintiff and his family have "suffered extensive stress and harassment," including numerous phone calls.[6] (Am. Compl. at ECF p. 4.) The Amended Complaint also refers to "confusing" statements made by Shellpoint but does not identify any specific statements. (Am. Compl. at ECF p. 8.)

Plaintiff alleges that the threats of displacement have caused fear, depression, nightmares, and "continuous sleep deprivation," have negatively affected his children's schoolwork, and have made it difficult for him to "work[ ] productively and effectively." (Am. Compl. at pp. 6-7.) He alleges that his credit and his "future of trying to recoup a fair life for [his] family has been destroyed." (Am. Compl. at ECF p. 6.) Plaintiff specifically avers that he has suffered "economic loss" due to reports made to credit agencies. (Am. Compl. at ECF p. 4.) He is seeking compensation of three times the "unproven alleged loan debt through profiting" of $445,000 and punitive damages for a total of $2,335,000. (Am. Compl. at ECF pp. 4, 8.)

## II. Procedural History

The Court construes the Amended Complaint as asserting the following claims: (1) a violation of RESPA, 12 U.S.C. § 605(e), for failing to respond to the QWR; (2) violations of the FDCPA,

---

[6] It appears that at the time the Amended Complaint was filed, the calls had stopped. (Am. Compl. at ECF p. 7.)

5

including 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g; and (3) a violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.

On October 24, 2017, Defendants filed their motion to dismiss. (See Defs.' Mot.) Plaintiff filed his opposition on November 27, 2017, and Defendants filed their reply on December 11, 2017. (Pl.'s Opp., Docket Entry 15; Defs.' Reply, Docket Entry 16.)

DISCUSSION

I. Legal Standard

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the Amended Complaint as true,

6

this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); see also Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015) (noting that the dismissal of a pro se complaint pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citation omitted). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Hiller, 2015 WL 4619624, at *7.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d

7

67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira, 380 F.3d at 67; see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

II. RESPA Claim

The Amended Complaint alleges that Defendants violated RESPA by failing to respond to the QWR and related correspondence. (Am. Compl. at ECF pp. 4-5.) Congress enacted RESPA to "'insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by [ ] abusive practices that have developed in some areas of the country.'" Yanes v. Ocwen Loan Servicing, LLC, No. 13-CV-2343, 2015 WL 631962, at *7 (E.D.N.Y. Feb. 12, 2015) (alteration in original) (quoting 12 U.S.C. § 2601). Section 2605(e) outlines the duty of loan servicers when they receive an inquiry from a borrower. 12 U.S.C. § 2605(e). Specifically, this section "'permits a borrower to submit to a servicer of her loan(s) a qualified written request (QWR) for information related to

8

servicing of the loan and requires the servicer to respond accordingly.'" Noriega v. US Bank, Nat'l Ass'n, No. 16-CV-1058, 2017 WL 3172998, at *7 (E.D.N.Y. July 25, 2017) (quoting Gorbaty v. Wells Fargo Bank, N.A., No. 10-CV-3291, 2014 WL 4742509, at *4 (E.D.N.Y. Sept. 23, 2014) (internal quotation marks omitted). A QWR is "correspondence that identifies a borrower's account and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." Mack v. ResCap Borrower Claims Trust, 678 F. App'x 10, 14 (2d Cir. 2017) (internal quotation marks and citation omitted). When a servicer receives a QWR, it must acknowledge receipt within five days and depending on the nature of the inquiry, take certain actions within thirty days. 12 U.S.C. § 2605(e)(1)-(2). If the servicer fails to comply with Section 2605(e), a borrower may recover "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1).

Defendants argue that the RESPA claim should be dismissed against the Bank of New York Mellon because only servicers are subject to claims related to QWRs, and the Bank of

9

New York Mellon is not the servicer of Plaintiff's loan.[7] (Defs.' Br., at 5.) The Court agrees. Section 2605(e) concerns the "duty of loan servicer[s] to respond to borrower inquiries," see 12 U.S.C. § 2605(e), and Plaintiff acknowledges that Shellpoint is the servicer of the loan, (Am. Compl. at ECF p. 4). Therefore, the RESPA claim against the Bank of New York Mellon is DISMISSED.

Next, Defendants contend that the RESPA claim against Shellpoint must be dismissed because Plaintiff's QWR was sent to the incorrect address and as a result, it had no duty to respond. (Defs.' Br. at 5-6.) The regulations implementing RESPA permit servicers to designate a specific address for QWRs. See Roth v. CitiMortgage Inc., 756 F.3d 178, 181 (2d Cir. 2014); 12 C.F.R § 1024.36(b) ("A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information . . . . The notice shall include a statement that the borrower must use the established address to request information."). The Second Circuit recently held that "'[f]ailure to send the [request] to the designated address . . . does not trigger the servicer's duties under RESPA.'" Roth, 756 F.3d at

---

[7] Defendants' first argument--that the Court should dismiss the RESPA claim based on Plaintiff's failure to attach the QWR to his Amended Complaint--does not warrant detailed discussion. (See Defs.' Br., Docket Entry 13-5, at 5.) While the QWR was not attached to the Amended Complaint, it was attached to the initial Complaint. In light of Plaintiff's pro se status, the Court declines to dismiss the claim for this reason.

10

182 (quoting Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1148-49 (10th Cir. 2013) (alterations in original)). Specifically, "as long as a servicer complies with the notice requirements . . . for designating a QWR address, a letter sent to a different address is not a QWR." Id. For example, a servicer may designate an address for QWRs by including the address in the borrower's monthly mortgage statement. See Kelmetis v. Fed. Nat'l Mortg. Ass'n, No. 16-CV-0246, 2017 WL 395120, at *8 (N.D.N.Y. Jan. 27, 2017).

Plaintiff's correspondence was sent to P.O. Box 740039, Cincinnati, Ohio, 45274. (QWR at ECF p. 14.) Defendants contend that Shellpoint's website designates P.O. Box 10826, Greenville, South Carolina, 29603 as the proper address for information requests, and they attached a copy of the "Contact Us" page of Shellpoint's website as an exhibit to their motion.[8] (Website, Mawere Decl., Ex. C, Docket Entry 13-4.) Defendants submit that because Plaintiff did not send his request to the Greenville address, his request cannot be considered a QWR and no duty to respond arose. Even assuming that the Court could consider the

---

[8] In his opposition, Plaintiff contends that whether he used the correct address is irrelevant because Shellpoint acknowledged receiving the QWR by letter dated April 27, 2017. (Pl.'s Opp. at 4, 18.) However, after Roth, any alleged response by the servicer is not determinative. See Roth, 756 F.3d at 182 (reasoning that when a servicer properly notifies a borrower of its designated QWR address, and the borrower sends a QWR to a different address, "a letter sent to a different address is not a QWR [ ] even if an employee at that address . . . in fact responds to that letter.").

information on Shellpoint's website for purposes of a motion to dismiss, this argument fails. Publishing the designated address on a website does not constitute "written notice to [the] borrower." See 12 C.F.R. § 1024.36(b). Furthermore, the website does not "include a statement that the borrower must use the established address to request information." See id. While Defendants may have designated an address on Plaintiff's monthly statements or in a separate notice, those documents--even if they could be considered at this stage--are not before the Court. Because it is unclear if Shellpoint properly designated a QWR address, dismissal for this reason is not warranted at this juncture. See Roth, 756 F.3d at 182 (holding that correspondence sent to a different address is not a QWR "as long as a servicer complies with the notice requirements . . . for designating a QWR address") (emphasis supplied).

Finally, Defendants argue that the RESPA claim fails because Plaintiff has not sufficiently pled damages. (Defs.' Br. at 6-7.) To survive a motion to dismiss, "a plaintiff bringing a Section 2605 claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify actual damages that he or she sustained as a result of defendant's alleged violation(s)." Yanes, 2015 WL 631962, at *7. In other words, a plaintiff must demonstrate that his actual damages "were proximately caused by the defendant's violation of RESPA," and

12

when the claim involves a failure to respond to a QWR, the complaint "must offer factual allegation[s] linking [the] alleged harms to [the defendant's] failure to timely respond to [the] QWR[ ]." Bonadio v. PHH Mortg. Corp., No. 12-CV-3421, 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) (first and third alterations in original) (internal quotation marks omitted). When a plaintiff is seeking statutory damages, he must show "a pattern or practice of noncompliance with the requirements of § 2605." Noriega, 2017 WL 3172998, at *8 (internal quotation marks and citation omitted).

The Court agrees that Plaintiff's allegations of damages are insufficient. He alleges that: (1) he has been "paying since 2006 to countless organizations, ha[s] gone through economic loss and [he and his] family suffer[] [from] stress [and] depression," (Am. Compl. at ECF p. 4); (2) he has "suffered from economic loss due to damage reporting of credit," (Am. Compl. at ECF p. 4); (3) his "family is being threatened with displacement from [their] home and not knowing where [they] will live has caused fear and depression, nightmares, [and] school work for [his] children has faltered," (Am. Compl. at ECF p. 6); (4) he has "a difficult time working productively and effectively, thinking about not having a home," (Am. Compl. at ECF p. 6); and (5) "the fear, depression of my family being kicked out of [their] home has caused and continual letters stating the same has caused (irreparable) damage," (Am. Compl. at ECF p. 7). However, he has not explained how

13

Shellpoint's failure to respond caused his damages. See, e.g., Yanes, 2015 WL 631962, at *7 (dismissing RESPA claim when the plaintiff alleged that he suffered "financial loss and severe mental anguish and emotional distress over facing the loss or possible loss of his home") (internal quotation marks omitted); Bonadio, 2014 WL 522784, at *6 (dismissing RESPA claim when the plaintiff alleged that his damages included "time spent and inconvenience" and "emotional distress and mental anguish") (internal quotation marks omitted); Gorbaty v. Wells Fargo Bank, N.A., No. 10-CV-3291, 2014 WL 4742509, at *5-9 (E.D.N.Y. Sept. 23, 2014) (finding the plaintiff's allegations of litigation costs, loss of equity, reputational harm, emotional harm, and harm to creditworthiness to be insufficient to allege actual damages as a result of the alleged Section 2605 violation). Based on these allegations, it appears that Plaintiff's damages were not caused by Shellpoint's failure to respond to the QWR, but by difficulties repaying the mortgage loan and potential foreclosure proceedings. Moreover, Plaintiff has failed to allege any "pattern or practice of non-compliance" to support a claim for statutory damages.[9] See Gorbaty, 2014 WL 4742509, at *8 (holding that allegations of statutory damages were insufficient when the plaintiff failed to

---

[9] As a result, the Court need not address whether actual damages are required to state a claim under Section 2605. See Noriega, 2017 WL 3172998, at *8 n.10.

"adduce[ ] any factual allegations suggesting additional RESPA violations by the Defendants beyond those already alleged").

Therefore, because Plaintiff has not adequately pled damages, the RESPA claim against Shellpoint is DISMISSED.

III. The FDCPA Claims

The Amended Complaint alleges that Plaintiff and his family have "suffered extensive stress and harassment" and received numerous phone calls. (Am. Compl. at ECF p. 4.) The Amended Complaint also refers to "confusing" statements made by Shellpoint but does not identify any specific statements. (Am. Compl. at ECF p. 8.) While Plaintiff does not refer to any specific provisions of the FDCPA, the Court construes the Amended Complaint as asserting claims under 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g.[10]

The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001); see also 15 U.S.C. § 1692(e) (describing that the purpose of the statute is "to eliminate abusive debt collection practices"). To assert a claim under the FDCPA, Plaintiff must allege three threshold requirements: (1) he was a "consumer"; (2)

---

[10] The Court must construe pro se submissions "liberally" and interpret them to "raise the strongest possible arguments." Nike, Inc. v. Top Brand Co., Ltd., No. 00-CV-8179, 2006 WL 2884437, at *2 (S.D.N.Y. Oct. 6, 2006).

15

Defendants were "debt collector[s]"; and (3) Defendants' act or omission violated the FDCPA. See Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Sections 1692e and 1692f prohibit the use of "false, deceptive, or misleading representation[s]" or "unfair or unconscionable means" to collect a debt. 15 U.S.C. §§ 1692e, 1692f. Section 1692g requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice," known as a validation notice. 15 U.S.C. § 1692g(a). The validation notice is required to contain certain information, including "the amount of the debt," "the name of the creditor to whom the debt is owed," and a series of statements outlining the dispute procedures. 15 U.S.C. § 1692g(a); see also Douyon v. N.Y. Med. Health Care, P.C., 894 F. Supp. 2d 245, 255 (E.D.N.Y. 2012), amended on reconsideration, No. 10-CV-3983, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013).

The Court finds that Plaintiff's allegations fail to state a FDCPA claim. Initially, it is unclear whether the Bank of New York Mellon or Shellpoint are debt collectors within the

meaning of the statute. See Roth, 756 F.3d at 183 (affirming dismissal of FDCPA claim when the amended complaint failed to allege that the defendant "acquired [the plaintiff's] debt after it was in default"). Further, the Amended Complaint fails to plead factual allegations to support Plaintiff's FDCPA claims and fails to provide the "short and plain statement" required by the Federal Rules. FED. R. CIV. P. 8(a)(2). Thus, to the extent that Plaintiff is asserting FDCPA claims, those claims are DISMISSED.

IV. Fourteenth Amendment Claim

Plaintiff alleges that Defendants' conduct violated his Fourteenth Amendment rights. (Am. Compl. at ECF pp. 6-7.) The Court construes these allegations as asserting a claim under 42 U.S.C. § 1983.

Section 1983 provides individuals with "a method for vindicating federal rights," including those rights conferred by the United States Constitution. Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979). To state a claim under Section 1983, a plaintiff must demonstrate that the defendant deprived him of a federal or constitutional right while acting under color of state law. Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011). The state action requirement exists "[b]ecause the United States Constitution regulates only the Government, not private parties." Flagg v.

Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted).

Because the Bank of New York Mellon and Shellpoint are not state actors, Plaintiff fails to state a Section 1983 claim for violations of his Fourteenth Amendment rights. Accordingly, the Fourteenth Amendment claim is DISMISSED.[11]

V. Leave to Amend

The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999), overruled on other grounds, Gonzaga v. Doe, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). See also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012).

---

[11] To the extent that Plaintiff is asserting claims under the Truth in Lending Act ("TILA") or Article 3 of the Uniform Commercial Code, those claims are also DISMISSED. Plaintiff cites TILA and UCC Article 3 as bases for federal question jurisdiction but fails to allege violations of any specific provisions or allege facts to support claims under any provisions. (See Am. Compl. at ECF p. 3.)

18

In light of Plaintiff's pro se status, the Court will allow Plaintiff to amend his Amended Complaint. The Court GRANTS Plaintiff leave to re-plead his Section 2605(e) claim for Shellpoint's failure to respond to the QWR and his FDCPA claims. In any amended pleading, Plaintiff is directed to plead specific facts (1) to demonstrate that his damages were proximately caused by Shellpoint's failure to respond to his QWR, and (2) to support his claims under the FDCPA. Additionally, if Plaintiff chooses to re-plead his Section 2605(e) claim, he is directed to attach the QWR to the Second Amended Complaint.

CONCLUSION

For the foregoing reasons, Defendants' motion (Docket Entry 13) is GRANTED IN PART and DENIED IN PART. The RESPA claim against the Bank of New York Mellon and the Fourteenth Amendment claim against the Bank of New York Mellon and Shellpoint are DISMISSED WITH PREJUDICE. To the extent the Amended Complaint asserts claims under TILA or the UCC, those claims are also DISMISSED WITH PREJUDICE. However, because the Court GRANTS Plaintiff leave to amend his RESPA claim against Shellpoint and the FDCPA claims against the Bank of New York Mellon and Shellpoint, those claims are DISMISSED WITHOUT PREJUDICE.

Any Second Amended Complaint shall be filed within thirty (30) days from the date of this Memorandum and Order, shall be titled Second Amended Complaint, and shall bear the same docket

number as this Order, No. 17-CV-4375(JS)(GRB).  Plaintiff is cautioned that the Second Amended Complaint will **completely replace the original Complaint and the Amended Complaint**. Therefore, all claims and allegations Plaintiff wishes to pursue **must** be included in the Second Amended Complaint.  If Plaintiff fails to file a Second Amended Complaint within thirty (30) days, this case will be dismissed with prejudice.

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    August   30  , 2018
          Central Islip, New York