UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
MARIO E. CASTRO,

               Plaintiff,                           Case No. 2:17-CV-04375

               v.

THE BANK OF NEW YORK MELLON, AS
TRUSTEE FOR THE CERTIFICATE HOLDERS OF
CWALT, INC., ALTERNATIVE LOAN TRUST
2006-0A11 F/K/A THE BANK OF NEW YORK
MELLON, ALTERNATIVE LOAN TRUST 2006-
0A11; UNKNOWN DOE'S 1-12,000 *et al.*;
SHELLPOINT MORTGAGE SERVICING,
UNKNOWN DOE'S 1-12,000 *et al.*

               Defendants.
--------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW SUPPORTING MOTION TO DISMISS**

## I.    INTRODUCTION[1]

The Court permitted Mr. Castro to file a second amended complaint in August 2018.

Even with four months, Mr. Castro filed a completely incomprehensible copy-and-paste

complaint in response to a looming foreclosure on his real property in Suffolk County. Without

pleading any facts, Mr. Castro contends BoNYM and Shellpoint, its servicer, violated a grab bag

---

[1] Defendants The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2006-OA11 Mortgage Pass-Through Certificates Series 2006-OA11, incorrectly sued herein as "The Bank of New York Mellon, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2006-0A11 f/k/a The Bank of New York Mellon, Alternative Loan Trust Alternative Loan Trust 2006-0A11" (**BoNYM**) and NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing incorrectly sued herein as "Shellpoint Mortgage Servicing" (**Shellpoint**), respectfully submit this memorandum of law supporting their motion pursuant to Fed. R. 12(b)(6) to dismiss plaintiff Mario E. Castro's second amended complaint, filed on December 3, 2018 (**SAC**). The Declaration of Natsayi Mawere, dated February 4, 2019 (**Mawere Decl.**) attaching exhibits A and C, accompanies this memorandum.

of federal and state statutes, including claims dismissed in August with prejudice. The Court should bring this matter to a close by dismissing the second amended complaint *with* prejudice.

## II.    STATEMENT OF FACTS

Mr. Castro executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, N.A., its successors and assigns, dated March 7, 2006, pledging real property commonly known as 419 West Hills Road, Melville, New York, as security for the repayment of a $448,800 loan. (Mawere Decl., ¶ 2, Ex. A.)  Countrywide assigned the mortgage to BoNYM on September 1, 2011. (*Id.*, ¶ 3, Ex. B.)

Mr. Castro filed this suit on July 24, 2017. [Dkt. No. 1[2]]. He amended his complaint on August 2, 2017. [Dkt. No. 4]. BoNYM and Shellpoint moved to dismiss Mr. Castro's complaint in October 2017, which Mr. Castro opposed in November 2017. [Dk. 13-18.]  The Court partially granted and denied BoNYM's motion on August 30, 2018. [Dk. 19.]  The Court dismissed Mr. Castro's Real Estate Settlement Procedures Act claim *with* prejudice as against BoNYM. [*Id.*]  The Court also dismissed Mr. Castro's Fourteenth Amendment, Truth in Lending Act, and UCC claims against BoNYM and Shellpoint *with* prejudice. [*Id.*]  The Court dismissed the RESPA claim against Shellpoint and Fair Debt Collection Practices Act claim against BoNYM without prejudice. [*Id.*]  The Court granted Mr. Castro leave to file an SAC, which he did on December 3, 2018. [Dk. 23.]

Mr. Castro also moved to set aside the August 30, 2018 order, which BoNYM and Shellpoint opposed. [Dks 22, 25, 27, 29.] That motion is pending.

---

[2] The Court may take judicial notice of and consider publicly available documents and Court documents on a motion to dismiss. *See, e.g., Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, at 350 n.6 (S.D.N.Y. 2012) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in court records of prior litigation and that relate to the case *sub judice*.").

2

47698732;2

Mr. Castro's SAC is nothing more than a "customized" copy-and-paste from a template available on a website called "SATCOMM" at https://satcomm911.com/PDFS/files/1.%20P.D.F.'s/COMMON%20LAW%20LAW%20SUIT.docxhttps://satcomm911.com/PDFS/files/1.%20P.D.F.'s/COMMON%20LAW%20LAW%20SUIT.docx.[3] (Mawere Decl., ¶ 4, Ex. C.)   "SATCOMM" means "THE SECURITIES ACQUISITION TRUST COMMISSION . . . a Multinational-International Consolidation Foundation and Securities Investment Firm that uses the most effective innovative methodologies to navigate multifaceted financial and commercial industries." (*Id.*)   Mr. Castro merely typed relevant information into the "Common Law Suit" template. (*Id.*).   None of the allegations in Mr. Castro's complaint has merit.   Despite three chances, Mr. Castro still cannot set out a viable cause of action.   The Court should dismiss Mr. Castro's complaint *with* prejudice because he cannot state a claim for which the Court can grant relief.

### III.    LEGAL STANDARD

The Court must dismiss a complaint where it fails to allege sufficient facts supporting the relief requested. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   To survive a Rule 12(b)(6) dismissal motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).   While a complaint need not make "detailed factual allegations," it must contain more than mere "labels and conclusions or formulaic recitations of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).   A complaint with "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in

---

[3] Defendants refer to SATCOMM's website for the limited purpose of identifying the source of Mr. Castro's complaint. *Cf. Katz v. Donna Karan Co., LLC*, 872 F. 3d 114 (2d Cir. 2017) (reversing district court's decision that the first six digits of a credit card obtained from a website was appropriate extrinsic evidence on Rule 12(b)(1) motion where evidence was "material and controverted" as to whether identity theft could occur when those 6 digits were printed on a receipt).

47698732;2

original). Where factual allegations permit the Court to infer only a possible—but not a plausible—claim for relief, it fails to meet the minimum standard. *Id.* at 679.

In assessing a Rule 12(b)(6) motion, the Court must take as true the complaint's allegations and draw all reasonable inferences in the plaintiff's favor. *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 109 (2d Cir. 2011). Mere legal conclusions do not merit this regard, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## IV.   ARGUMENT

### A.   Law of the Case Bars TILA, UCC, and Fourteenth Amendment Claims.

The Court dismissed Mr. Castro's TILA, UCC, and Fourteenth Amendment claims *with prejudice*. [Dk. 19.] That decision is law of the case and cannot be revisited absent a proper motion for reconsideration. *See Thompson v. Choinski*, 374 Fed. Appx. 222, 223 (2d Cir. 2010) ("law of the case barred plaintiff's challenge to his conviction because "[t]he law of the case commands when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless there has been an intervening change of law, availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.") (internal quotations and citations omitted); *Grimes v. Fremont Gen. Corp.*, 933 F.Supp.2d 584, 608-09 (S.D.N.Y. 2013) (holding law of the case applied to challenge court's earlier dismissal of federal causes of action). Because the Court already found Mr. Castro did not state a TILA, UCC, or Fourteenth Amendment cause of action, these issues should be re-examined now. [SAC at 9, 48, 52, 55-56.]

### B.   Mr. Castro's Does Not Plead a RESPA Claim.

Mr. Castro's only coherent reference to RESPA is in his "foundational premises" and his statement of claims. [SAC at 2, 12-13, ¶¶ 2, 35.] He contends he sent "defendants" two QWRs

4

and did not receive a response to either. [*Id.* at ¶¶ 2, 35.] He relies on the Court's August 2018 order's observation that Shellpoint's publication of an address on its website to which a borrower is directed to send a QWR is not "written notice to [the] borrower" where to send the QWR and the website's language does not include a statement the borrower *must* use that address (*see* Dk. 9 at 12), to argue he was not notified where to send his QWR. [*Id.*] He contends "defendants" failed in their duty to respond to his QWR. [*Id.*] To state a RESPA claim for an inadequate response to his QWR, Mr. Castro must prove: **(1)** Shellpoint is a servicer; **(2)** Shellpoint received a QWR; **(3)** the QWR related to the servicing of his loan; **(4)** Shellpoint's response was inadequate; and **(5)** recoverable damages. *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444-45 (E.D.N.Y. 2013). Mr. Castro's SAC does not plead any recoverable damages.

The Court explained in the August 2018 order that Mr. Castro must identify how Shellpoint's failure to respond to his QWR caused him harm. [Dk. 19 at 12-15.] Mr. Castro does not even attempt to make a showing, but instead makes a series of nonsensical claims "defendants caused him irreparable harm" [SAC at 50, ¶ 198] because he is entitled to an accounting and "complete set of financing documenting every single transaction with the account as prescribed by RESPA . . . " [*Id.* at 24, ¶ 70.] He also contends Shellpoint is somehow conspiring against him and the United States by not complying with its "government obligation" to show his default is valid. [*Id.* at 37, ¶¶ 124-32.] These claims relate to the existence of Mr. Castro's mortgage debt, not any failure to respond to a QWR.

Mr. Castro also states he suffered alleged damages "including failure of ability to concentrate at work and perform daily work activities, lack of sleep, stress, family issues, family stressing, medical issues due to stress . . . harassment/threats of unlawful foreclosure actions,

47698732;2

negative marks on his credit report . . . " [SAC at 50, ¶ 198.]  Mr. Castro's "emotional distress" claims are insufficient.  [Dk. 19 at 13]; *see also Kilgore v. Ocwen Loan Servicing, LLC*, 89. F. Supp. 3d 526, 539 (E.D.N.Y 2015) (holding borrower's "conclusory and unsupported" claim of actual damages where he "suffered financial loss and severe mental anguish and emotional distress" at losing his home "through foreclosure").  Mr. Castro's alleged damages are once again caused "by difficulties repaying the mortgage loan and potential foreclosure proceedings," not by a missing QWR response.  The Court should dismiss Mr. Castro's RESPA claim *with* prejudice.

The August 2018 order held Mr. Castro did not plead any facts supporting a potential statutory damages award.  [Dk. 19 at 14-15.]  Mr. Castro's SAC does not remedy this.  It pleads nothing relating to a "pattern of noncompliance" to justify statutory damages.  [*See generally* SAC].  Mr. Castro's contention he is entitled to damages of $2 million [*id.* at 24-25, ¶¶ 70-71] and $2.5 million in letters of credit [*id.* at 45, ¶¶ 174-76] does not meet the requirement—it is a pure conclusion.  What little Mr. Castro pleads shows his claims only involve his loan.  *See e.g., Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10-CV-3291(NGG)(SMG), 10-CV-3354(NGG)(SMG), 2012 WL 1372260, at *5 (E.D.N.Y Feb. 12, 2015) ("Two violations do not qualify as a 'standard or routine way of operating'" and cannot sustain a RESPA claim for statutory damages) (internal citations omitted).

## C.    No FDCPA Violation.

The August 2018 order permitted Mr. Castro to amend his complaint to assert an FDCPA claim.  [Dk. at 15-17.]  To state a claim, he must plead **(1)** he is a consumer who owes a debt or a person who has been the object of collection efforts, **(2)** BoNYM and Shellpoint are "debt collectors" as defined by the statute, and **(3)** BoNYM and Shellpoint engaged in some act or omission in violation of FDCPA requirements.  *Kapsis*, 929 F. Supp. 2d at 438-40.

47698732;2

Mr. Castro does not plead Shellpoint or BoNYM violated any specific FDCPA provision in any specific way. The SAC is well short of even basic notice pleading standards. *See, e.g., Sembler v. Attention Funding Trust*, No. 07-dv-2493, 2009 WL 2883049, at \*2 (E.D.N.Y. Sept. 3, 2009) (dismissing FDCPA claim as conclusory where plaintiff failed to specify the content and nature of the communications at issue, or how they violated FDCPA); *Moore v. Diversified Collection Servs., Inc.*, No. 07-cv-397, 2009 WL 1873654, at \*4 (E.D.N.Y. June 29, 2009) (dismissing portions of conclusory FDCPA allegations). His claim must be dismissed.

Mr. Castro's conclusory statement that BoNYM and Shellpoint are "debt collectors" [SAC at 50], does not meet FDCPA's requirement. The statutory definition of a "debt collector" explicitly excludes a person collecting a debt "obtained by such a person as a secured party in a commercial credit transaction involving the creditor." 15 U.S.C. § 1692a(6)(F). A creditor is one who "offers or extends credit creating a debt or to whom a debt is owed" unless the debt is acquired while in default and solely for the purpose of collecting on the debt for another. *Id.*, § 1692(a)(4). These definitions leave a trust that owns a mortgage loan, such as BoNYM, outside FDCPA coverage. *E.g., Johnson-Gellineau v. Steine & Assocs., P.C.*, 16-CV-9945, 2018 U.S. Dist LEXIS 53873, at \*33-37 (dismissing FDCPA claim against trustee of securitized trust which owned plaintiff's mortgage loan because it was not a debt collector); *Munroe v. Specialized Loan Servicing, LLC*, 14-CV-1883(MKB)(LB), 2016 U.S. Dist LEXIS 40716, at \*13-14 (E.D.N.Y. March 28, 2016) (same); *Springer v. U.S. Bank, Nat'l Ass'n*, 15-CV-1107(JGK), 2015 U.S. Dist LEXIS 171734, at \*35-36 (S.D.N.Y. Dec. 23, 2015) (same).

To the extent the Court finds relevant Mr. Castro's conclusory allegation Shellpoint is "a Debt Collector as described in the FDCPA . . . as they have also purchased this debt while it is/was in default makes them debt collectors," Mr. Castro has not stated an FDCPA claim. The

47698732;2

complaint must contain more than a recitation of the statutory language to maintain a cause of action. Even if the Court liberally construed Mr. Castro's claims, they do not fall within FDCPA's ambit. Mr. Castro appears to argue his mortgage is in violation of the FDCPA because the mortgage did not secure property, BoNYM and Shellpoint purchased his loan while it was in default, and BoNYM and Shellpoint are not entitled to collect that debt. [*See generally* SAC at 24-25, 32-33, 49-50, 124, ¶¶ 70-71, 95-107, 196-97.] His nonsensical claim fails to meet any of FDCPA's stated pleading requirements.

Mr. Castro's claims are not limited in time. To the extent Mr. Castro alleges an FDCPA violation that occurred more than a year before his 2018 claim, it is time-barred. FDCPA claims must be brought within one year. 15 U.S.C. § 1692k(d); *Kapsis*, 923 F. Supp. 2d at 441.

**D.     No FCRA Violation.**

Mr. Castro's FCRA claim against Shellpoint also fails. FCRA imposes a duty on "furnishers of information" to provide accurate and complete information to consumer reporting agencies. 15 U.S.C. § 1681s-2(a). It also requires furnishers to correct and update information they report promptly upon learning such information was incomplete or inaccurate. *Id.*, § 1681s-2(b). Consumers have no private right of action against a furnisher of information who simply provides inaccurate information to CRAs in violation of 15 USC § 1681s-2(a). *E.g., Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 304 (E.D.N.Y. 2014). Consumers do have a private right of action under 15 U.S.C. § 1681s-2(b), which imposes a duty upon furnishers to investigate disputed information once notified of the dispute by the CRA. To state a claim for relief, a plaintiff must allege the furnisher received notice of a credit dispute from a CRA and then acted "in willful or negligent noncompliance with the statute." *Nguyen*, 66 F. Supp. 3d at 305 (*quoting Markovskaya v. Am.*

8

47698732;2

*Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012).  Mr. Castro has not met

any part of the pleading requirement.

Mr. Castro must at least plead when Shellpoint was notified of disputed credit

information.  *See Cooke v. U.S. Bank Nat'l Ass'n for Structured Asset Sec. Corp. Mortg. Pass-*

*Through Certificates, Series 2006-BC5*, No. 17-CV-1393(KAM)(RER), 2017 WL 4350426, at

\*3 (E.D.N.Y. June 7, 2017) (dismissing inadequately pled FCRA claim).  He does not assert he

notified *any* CRA of alleged information or that the CRA notified Shellpoint of his dispute.  To

the extent Mr. Castro has been aware of any alleged FCRA violation for more than two years, the

statute of limitations bars his claim.  *See Trans Union LLC v. Lindor*, 393 F. App'x 786, 788 (2d

Cir. 2010) ("An FCRA action must be brought 'not later than the earlier of—(1) 2 years after the

date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years

after the date on which the violation that is the basis for such liability occurs.'").

## E.    Mr. Castro's Remaining Claims Are Not Viable.

Mr. Castro's remaining claims refer to the Administrative Procedures Act, Simple

Contract Clause, "rules of common law," references to "insurance" and "bookkeeping" and a

constructive fraud claim, are cut-and-paste boilerplate claims that do not plead *any* direct cause

of action against BoNYM and Shellpoint.  *See generally* SAC; Mawere Aff., ¶ 4, Ex. C.  For

most causes of action, the Federal Rules eliminated the cumbersome requirement that a claimant

set out with particularity the facts upon which he bases his claim, but a plaintiff must still plead

facts showing some plausible entitlement to relief.  *See Twombly*, 550 U.S. at 555-556 (Fed. R.

Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is

entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the

9

grounds upon which it rests"). By not offering factual allegations at all, Mr. Castro has not satisfied the requirement of "fair notice" and the "grounds on which his claim rests." *Id.*

The SAC challenges the pooling and servicing agreement, trust arrangement, and BoNYM or Shellpoint's possession of his note. [Dk. 23 at 14-24.] These claims are nothing more than customized copy-and-paste from SATCOMM's template complaint. (Mawere Aff., Ex. C.) Even if they were not, lack of standing can form a defense to certain actions, but it is not a cause of action in its own right. *See, e.g., Karamath v. U.S. Bank, N.A.*, No. 11 CV 1557 (NGG) (RML), 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012). Mr. Castro also lacks standing to challenge the securitization process because he was not a party to any related secondary market transactions concerning his loan. "Indeed, courts have uniformly rejected the argument that securitization of a mortgage loan provides the mortgagor a cause of action." *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 386 (E.D.N.Y. 2014) *quoting Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 898-99 (D. Haw. 2011). This is because the mortgagor lacks standing because they are not parties to or beneficiaries of the relevant agreements, such as the PSA that securitizes the loans. *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 87 (2d Cir. 2014) ("We conclude that the district court properly ruled that plaintiffs lacked standing to enforce the agreements to which they were not parties and of which they were not intended beneficiaries.")

Mr. Castro is also not entitled to an injunction or declaratory relief. [Dk. at 49-52, ¶¶ 194-205.] He has not pled any substantive cause of action supporting such relief. Neither injunctive nor declaratory relief is itself a cause of action. *See, e.g., Potente v. Citibank, N.A.*, 282 F. Supp. 3d, 538, 542 (E.D.N.Y. 2017).

47698732;2

**F.      No Further Amendments Allowed.**

Mr. Castro amended the original complaint of his own accord.  [Dk. 4.]   The Court's August 2018 order permitted Mr. Castro to amend again.  [Dk. 23.]  The SAC raises no plausible violation of federal or state statutes.   The Court should not permit another amendment.   The Court may allow a party to amend its pleading under Rule 15(b) and should "freely" do so "when justice so requires."  An exception exists where a party cannot plead any new facts entitling him to relief.  The complaint fails to state a claim under *any* statute and Mr. Castro cannot cure these deficiencies.  Any further amendment attempt is futile.  *See, e.g., Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (denying cross-motion for leave to amend as "futile . . . if it appears beyond doubt plaintiff can plead no set of facts that would entitle him to relief"); *see also Azurite Corp. v. Amster & Co.*, 844 F. Supp. 929, 939 (S.D.N.Y. 1994) (denying leave to amend where proposed "amendment would be futile because the factual foundations of Azurite's new allegations are insufficient, as a matter of law").

## V.      CONCLUSION

Mr. Castro does not plead a cognizable RESPA claim.  His conclusory and often nonsensical kitchen-sink references to federal and state statutes, without any supporting facts, cannot prevent dismissal.  To the extent Mr. Castro seeks leave to amend his complaint, it must be denied *with* prejudice.  The Court should dismiss Mr. Castro's complaint in its entirety.

47698732;2

Dated:  February 4, 2019

Respectfully submitted,

**AKERMAN LLP**

Natsayi Mawere (natsayi.mawere@akerman.com)
Jordan M. Smith (jordan.smith@akerman.com)
666 Fifth Avenue, 20th Floor
New York, NY 10103
(212) 880-3800

*Attorneys for The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2006-OA11 Mortgage Pass-Through Certificates Series 2006-OA11, incorrectly sued herein as "The Bank of New York Mellon, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2006-0A11 f/k/a The Bank of New York Mellon, Alternative Loan Trust Alternative Loan Trust 2006-0A11" and NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing incorrectly sued herein as "Shellpoint Mortgage Servicing"*

47698732;2